IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

GEORGE CHOONGA MOONGA,

   Plaintiff,

     v.

JULIE MOONGA,

   Defendant.

CIVIL ACTION FILE
NO. 1:17-CV-2136-TWT

**OPINION AND ORDER**

This is an action brought pursuant to The Convention on the Civil Aspects of International Child Abduction, known as the Hague Convention, and the International Child Abduction Remedies Act ("ICARA"). It is before the Court on the Plaintiff George Choonga Moonga's Motion for Necessary Expenses [Doc. 35]. For the reasons stated below, the Plaintiff's Motion for Necessary Expenses [Doc. 35] is GRANTED in part.

**I. Background**

The Plaintiff originally filed this action seeking a return of his minor child to the United Kingdom of Great Britain and Northern Ireland. On August 7, 2017, the Court conducted a hearing and heard testimony from both the Plaintiff and the Defendant. Based on the testimony and evidence reviewed by the Court, the Court granted the Plaintiff's petition, and ordered that the child be

immediately returned to the United Kingdom in the company of her father, the Plaintiff. Pursuant to ICARA's fee shifting statute, 22 U.S.C. § 9007, the Plaintiff now moves to recover attorney's fees and other necessary expenses from the Defendant.

## II. Discussion

"ICARA permits a successful petitioner to recover reasonable fees and costs; the provision is consistent with the Hague Convention's overarching goal of deterring wrongful child abductions and retentions."[1] "This requirement is intended to restore the petitioner to the financial position he or she would have been in had there been no removal and to deter an abduction from happening in the first place."[2] In particular, Section 8(b)(3) of ICARA states that:

> Any court ordering the return of a child pursuant to an action brought under section 9003 of this title shall order the respondent to pay necessary expenses incurred by or on behalf of the petitioner, including court costs, legal fees, foster home or other care during the course of proceedings in the action, and transportation costs related to the return of the child, unless the respondent establishes that such order would be clearly inappropriate.[3]

This creates a "mandatory obligation on courts to award necessary expenses to a successful petitioner, except when the respondent demonstrates that an award

---

[1] *Fuentes-Rangel v. Woodman*, No. 2:14-CV-00005-WCO, 2015 WL 12999707, at *1 (N.D. Ga. July 29, 2015).

[2] *Ross v. Worley*, No. 1:13-CV-60-WSD, 2013 WL 12073466, at *1 (N.D. Ga. Apr. 4, 2013) (quotations omitted).

[3] 22 U.S.C. § 9007(b)(3).

would be clearly inappropriate."⁴ In other words, this creates a strong, rebuttable presumption in favor of a fee award.⁵

Thus, the Court must proceed with two inquiries. The first asks whether the petitioner's requested fees were "necessary." The second asks whether an award of such fees would be "'clearly inappropriate' in light of respondent's financial circumstances, subjective good faith in his actions, or other equitable circumstances that suggest further diminution is just."⁶

### A. Necessary Fees

The Plaintiff requests a total of $60,676.92 in fees and expenses. Included in this are $1,720.53 for court costs, $50,365.00 for legal fees and expenses, and $8,591.39 for transportation costs related to the return of the child. The court fees are obviously necessary expenses. However, the Defendant challenges the necessity of all of the Plaintiff's legal fees and transportation costs.

This inquiry is guided by the lodestar framework.⁷ "Under the lodestar framework, the court multiplies the number of reasonable hours expended by a reasonable rate. A reasonable hourly rate is 'the prevailing market rate in the

---

⁴ *Rath v. Marcoski*, No. 18-10403, 2018 WL 3799875, at *2 (11th Cir. Aug. 10, 2018) (quoting *Salazar v. Maimon*, 750 F.3d 514, 519 (5th Cir. 2014)).

⁵ *Id.* at *3.

⁶ *Fuentes-Rangel*, 2015 WL 12999707, at *1.

⁷ *Id.*

relevant legal community for similar services by lawyers of reasonably comparable skills, experience, and reputation.'"[8]

Although the Plaintiff was required to retain a solicitor in the United Kingdom in relation to this case, he is not seeking reimbursement of those expenses; rather, he is only seeking reimbursement for fees spent on local counsel. The Plaintiff specifically retained his attorneys because of their demonstrated experience in Hague Convention cases. The Plaintiff claims approximately 250 hours of work were spent on this matter by his attorneys, although approximately 38 of these hours were not charged to the Plaintiff. His attorneys charged $400 per hour for partner time, between $175 and $250 per hour for associate time, and between $95 and $150 per hour for law clerk and paralegal time. The majority of work – about 151 hours – was assigned to an associate and paralegal, helping to keep the costs down. Only approximately 44 hours of partner time were spent. These rates are reasonable and in line with the prevailing rates of the Atlanta market.

Even though the rates are reasonable, the Court must determine if the number of hours worked were reasonable, and whether the request includes any unnecessary or duplicative work. The "[C]ourt has discretion to exclude from the calculation of attorneys' fees hours that were not reasonably expended. Furthermore, where the attorney's documentation is inadequate, or the claimed

---

[8] *Id.* (quoting *Norman v. Housing Auth. of City of Montgomery*, 836 F.2d 1292, 1299 (11th Cir. 1988)).

hours are duplicative or excessive, the Court may reduce the award accordingly."[9] "The fee applicant bears the burden of establishing entitlement to a fee and documenting hours expended on the matter[, but t]he party opposing the fee application has the obligation to provide specific and reasonably precise objections concerning the hours that the party wishes to exclude."[10] "Generalized statements that the time spent was reasonable or unreasonable of course are not particularly helpful and not entitled to much weight."[11]

The Defendant first raises generalized objections that the amount of time spent and the amount of attorneys employed on this case were excessive. Like the court in *Fuentes-Rangel*, "[t]he court recognizes that the legal fees incurred in this case are higher than the average ICARA case. But this is due in no small part to [the Defendant]. The expenses associated with this case could have been much lower had [the Defendant] taken a more reasonable position throughout the litigation."[12] Instead, every possible issue was contested and made significantly more difficult by the Defendant's positions. In addition, the Plaintiff's requested fee does not even fully represent the amount of time

---

[9] *Dawson v. McPherson*, No. 1:14CV225, 2014 WL 4748512, at *5 (M.D.N.C. Sept. 23, 2014) (quotations and citations omitted).

[10] *Fuentes-Rangel*, 2015 WL 12999707, at *2 (citing *Norman*, 836 F.2d at 1303 and *Lambert v. Fulton Cnty., Ga.*, 151 F. Supp. 2d 1364, 1369 (N.D. Ga. 2000)).

[11] *Norman*, 836 F.2d at 1301.

[12] *Fuentes-Rangel*, 2015 WL 12999707, at *2.

actually spent on this matter, as he has elected not to seek the expenses he incurred for hiring a solicitor in the United Kingdom.

The Defendant also challenges the Plaintiff's request for time spent "in which the various employees of the law firm were communicating with each other."[13] She calls these tasks "law firm management." This argument is without merit. All of the instances which the Defendant cites are clearly compensable time. For example, the Defendant takes issue with an associate billing for communicating with a partner "regarding the status of the case and next step[s]," or for an associate communicating with a partner "regarding the best strategy" on visitation with the child.[14] This is not "law firm management." This is case strategy, and it is both reasonable and necessary for that which the Plaintiff hired his attorneys for: winning his case.

Lastly, the Defendant challenges some of the Plaintiff's claimed travel expenses as personal costs not related to the return of the child. In particular, the Defendant challenges a number of Uber charges the Plaintiff seems to have spent to transport him and his daughter to and from various events in the Atlanta area. The Defendant argues that "only those Uber charges related specifically to Court or travel to the airport should be considered" related to the return of the child.

---

[13] Def.'s Resp., at 8.

[14] Def.'s Resp., at 8-12.

The Defendant is correct that normally courts would not award fees for costs incurred during the normal care of the child, the theory being that the parent would have incurred those costs anyway. But that theory is inapposite in this case, where the Plaintiff incurred these particular costs because he was required to be in a foreign country without means of transportation in order to obtain the rightful return of his child to the United Kingdom. Had the Plaintiff and the child been at home in the United Kingdom, he would not have incurred those expenses. Thus, they are not normal costs incurred in caring for himself or his child, but are related to the return of his child. Thus, they fall within the coverage of ICARA's fee shifting framework. Given the evidence and totality of the circumstances, the Court finds that the Plaintiff's reported costs of $60,676.92 were both reasonable and necessary in this case.

### B. "Clearly Inappropriate" Inquiry

The Court's inquiry continues by determining the appropriateness of awarding the Plaintiff's requested fee. Among the relevant considerations in ICARA fee awards is whether a full fee award would leave a parent unable to care for her child and "whether a respondent had a good-faith belief that her actions in removing or retaining a child were legal or justified."[15] The Defendant

---

[15] *Rath*, 2018 WL 3799875, at *4.

bears the "substantial burden of establishing that a fee award is clearly inappropriate."[16]

There is no question that an award of attorney's fees and other necessary expenses is entirely warranted in this case. The Defendant argues that doing so would be inappropriate because of her financial situation. In her response brief, the Defendant claims that she "is currently unemployed with no source of income," and that she is incurring significant financial costs as a result of both this litigation and the ongoing litigation in the United Kingdom.[17] During the course of this case, however, the Court has found the Defendant to be fundamentally lacking in credibility. Like the boy who cried wolf, she has consistently made wild claims that have no basis in evidence or in fact, and this situation is no different. Less than a year ago she filed a sworn statement in an English court saying that she was employed with a relatively good salary.[18] Although she now claims she is unemployed, she presents no evidence to support that assertion.[19] Nor has she provided any evidence to suggest she would be so financially burdened by an award of fees that she would no longer be able to care

---

[16] *Id.* at *3.

[17] Def.'s Resp., at 4.

[18] Pl.'s Reply, Ex. A.

[19] See *Salazar v. Maimon*, 750 F.3d 514, 522 (5th Cir. 2014) (recognizing that the respondent "had a statutory obligation to come forward with evidence to show the claimed fees were clearly inappropriate").

for the child. Given the nature of this case, the Court finds it entirely appropriate to award fees in this case.

That being said, some reduction in the award is also warranted. Assuming the Defendant still has her job – and the Court has no substantive reason to believe she does not – a full-fee award would constitute over 80% of her annual salary before tax. That is a substantial burden on anyone, let alone a parent who does not have permanent status in her child's resident country. Accordingly, the Court finds that a reduction of approximately one-third is appropriate in this case.[20]

### III. Conclusion

For the reasons stated above, the Plaintiff's Motion for Necessary Expenses [Doc. 35] is GRANTED in part. The Plaintiff's fees and costs award is reduced to $40,000.00. The clerk is directed to enter a judgment accordingly.

SO ORDERED, this 23 day of August, 2018.

/s/Thomas W. Thrash
THOMAS W. THRASH, JR.
United States District Judge

---

[20] *See Fuentes-Rangel*, 2015 WL 12999707, at *3 (reducing requested award by one-third due to respondent's financial condition).